(929 P.2d 1382)
No. 74,931

MAX HUNDLEY, *Appellant,* v. DAVID R. MCKUNE, WARDEN OF THE LANSING CORRECTIONAL FACILITY, *Appellee.*

Opinion filed December 13, 1996.

*Charles J. Cavenee,* of Legal Services for Prisoners, Inc., of Lansing, for appellant.

*Linden G. Appel,* deputy chief counsel, Kansas Department of Corrections, of Topeka, for appellee.

Before KNUDSON, P.J., MARQUARDT, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

BRAZIL, J.: Max Hundley appeals the district court's denial of his petition for writ of habeas corpus pursuant to K.S.A. 60-1501. We affirm.

Hundley, an inmate at the Lansing Correctional Facility, attempted to obtain minimum custody by exception, a reduced custody classification, in November 1994. The program management committee denied the request, noting "How do we justify this with the central monitor sheet for planning a violent escape 3 yrs. ago?" The basis for this denial was a report in which a corrections supervisor reported information from an inmate informant that Hundley was involved in an escape plan.

Hundley filed a grievance on December 27, 1994, claiming that any information in his file stating that he was involved in an escape plot was erroneous and needed to be removed from his file. Hundley also requested that the prison authorities reconsider the custody by exception decision without considering the erroneous in-

formation concerning the escape plot, or, in the alternative, to let him see the statement so he could make specific challenges to the accuracy of the report. The prison authorities responded by taking no action.

On February 27, 1995, Hundley filed a petition for relief pursuant to K.S.A. 60-1501. On August 7, 1995, the district court denied Hundley access to the report but remanded the grievance to the Department of Corrections (DOC) to address the issue of whether the report was in fact erroneous. On August 21, 1995, Hundley received a memorandum that concluded there was no reason to disbelieve the information of the planned escape and, therefore, no action would be taken. On August 25, 1995, Hundley appealed the warden's decision to the Secretary of Corrections pursuant to regulations regarding inmate grievances. The Secretary of Corrections responded on August 31, 1995, upholding the warden's position. Hundley now appeals to this court.

This case involves the interpretation of the Kansas Criminal History Record Information Act, K.S.A. 22-4701 *et seq.*

Interpretation of a statute is a question of law, and an appellate court has unlimited review. *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

Statutory interpretation by an administrative agency responsible for enforcing a statute, however, is entitled to judicial deference.

"This deference is sometimes called the doctrine of operative construction. Further, if there is a rational basis for the agency's interpretation, it should be upheld on judicial review. If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps. The determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts." *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, 166, 815 P.2d 66 (1991).

K.S.A. 22-4709(a) provides: "Subject to the provisions of this act and rules and regulations adopted pursuant thereto, any person may inspect and challenge criminal history record information maintained by a criminal justice agency concerning themselves."

The DOC is a "criminal justice agency" as that term is defined by K.S.A. 22-4701(c)(1). K.S.A. 22-4701(b) defines "criminal his-

tory record information" as "data initiated or collected by a criminal justice agency on a person pertaining to a *reportable event.*" (Emphasis added.) K.S.A. 22-4705 lists reportable events and includes "an escape from confinement" under subsection (a)(9).

Since there was no escape, there was no "reportable event" and, thus, no criminal history record. Without such a reportable event to "pertain" to, a plot to escape cannot be criminal history record information. "Pertain" is defined by Webster's Ninth New Collegiate Dictionary 878 (1991) as "to belong as a part, member, accessory or product" or "to belong as an attribute, feature, or function."

K.S.A. 22-4705(e) states:

"Nothing in this section shall prevent a criminal justice agency from maintaining more detailed information than is required to be reported to the central repository. However, the dissemination of that criminal history record information is governed by the provisions of this act."

K.S.A. 22-4705(e) was not intended to expand the definition of criminal history record information provided in the definitional section of the Act, K.S.A. 22-4701(b). Hundley's reliance upon K.S.A. 22-4705(e) as justifying release of the information is misplaced. K.S.A. 22-4705 speaks to "dissemination." Disseminate is defined by K.S.A. 22-4701(f) as to transmit criminal history record information in any oral or written form. K.S.A. 22-4709(a), however, only provides petitioner a right to "inspect and challenge" criminal history record information. K.A.R. 10-12-2 permits "dissemination" of nonconviction data to only three classes: "(a) other criminal justice agencies; (b) those authorized by court order or subpoena; and (c) federal agencies for such investigative purposes as authorized by law or presidential executive order." This excludes Hundley. While information more detailed than the simple reportable events would apparently be included with criminal history record information when it is disseminated, this is a separate phenomenon from the inmate's right to inspect and challenge his or her own criminal history record information provided in K.S.A. 22-4709(a).

The district court's decision is affirmed simply based upon the language of the Act. A plot to escape is not a reportable event, and

there was no actual escape for the plot to pertain to. The information, therefore, is not criminal history record information, and Hundley does not have a right to inspect and/or challenge it.

Hundley argues that the court should follow *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), which found that an inmate has a limited due process right to have erroneous information expunged from his or her record. Kansas has not addressed this question.

The *Paine* court held that a claim of constitutional magnitude is raised where a prisoner alleges: (1) that the information is in his or her file; (2) that the information is false; and (3) that it is relied on, or likely to be relied on, to a constitutionally significant degree. In the instant case, there is no dispute on items 1 and 2. *Paine* ruled that requirement 3 has two dimensions. First, the error must be relied on for actions that raise due process concerns either directly or collaterally. Second, the alleged error must be a significant factor relied on in the decision-making process.

Hundley argues that the report itself or denial of minimum custody by exception "could have the collateral effect of a negative consideration" by the Parole Board.

Warden David R. McKune, appellee, acknowledges the "inherent appeal of the idea of such a right" but denies that Hundley satisfies the requirements of *Paine*. While the *Paine* court ruled that denial of parole did raise due process concerns, this dealt with the statutes of North Carolina. 595 F.2d at 202. Kansas has ruled that inmates do not have a liberty interest in the granting of parole. *Gilmore v. Kansas Parole Board*, 243 Kan. 173, 180, 756 P.2d 410, *cert. denied* 488 U.S. 930 (1988) (parole is a privilege and not a fundamental right). North Carolina's parole scheme may create a liberty interest, but this is irrelevant to our consideration. See *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979) (parole statutes may create liberty interest depending upon language of statute). The Parole Board's negative consideration of allegedly false information that is not criminal history record information does not raise constitutional concerns.

Neither does an inmate's custody classification raise due process concerns. In *Davis v. Finney*, 21 Kan. App. 2d 547, 902 P.2d 498

(1995), this court ruled that it would not review an inmate's claim that he or she was placed in either administrative or disciplinary segregation in violation of due process of law unless the statutes and regulations giving authority to prison officials contain mandatory language requiring that certain procedures must be employed or punishment will not occur unless specified predicates occur. Due process interests are generally limited "to freedom from restraint which imposes an atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis*, 21 Kan. App. 2d at 558 (citing *Sandin v. Conner*, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 [1995]). If an inmate can be placed in administrative segregation without raising due process concerns, denial of minimum custody by exception certainly does not.

Affirmed.